UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INA B.,<br><br>*Plaintiff*,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>*Defendant*. | Case No. 1:24-cv-06541<br><br>Hon. Beth W. Jantz |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. §405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Ina B.'s[1] application for Disability Insurance Benefits (DIB). The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). *See* Dkt. 5. For the reasons stated below, Plaintiff's Motion to Reverse or Remand the Decision of Social Security (Dkt. 10) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 17) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## BACKGROUND

Ina applied for Social Security benefits on July 1, 2021, alleging she became disabled on April 1, 2020. *See* Certified Admin. Record (R.) 153–54 (Dkt. 9-1). She sought DIB under Title II of the Social Security Act. *See* R. 153–54. The Social Security Administration denied Ina's claim initially on December 6, 2021, and upon reconsideration on July 29, 2021. R. 15. At Ina's request, an Administrative Law Judge (ALJ) conducted a hearing on May 9, 2023. *See* R. 30–64. The ALJ

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name.

denied Ina's claim in a written opinion dated December 15, 2023. *See* R. 12–24. The Appeals Council denied Ina's request for review, *see* R. 1–3, making the ALJ's decision the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. §405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

The ALJ applied the five-step analytical process required by 20 C.F.R. §404.1520. At the outset, the ALJ concluded that Ina "last met the insured status requirements of the Social Security Act on June 30, 2022." R. 17. This meant that the ALJ limited her analysis of Ina's claim to the period between April 1, 2020 (the alleged onset date), and June 30, 2022 (the date last insured). At Step 1, the ALJ concluded that it was "unclear whether [Ina] engaged in substantial gainful activity" during the disability period, but "at any rate" she "was not disabled on a medical basis." R. 17–18. At Step 2, the ALJ concluded that Ina had the severe impairment of migraines. R. 18. The ALJ also concluded that Ina "did not have medically determinable back or neck pain conditions during the relevant period," and that "[t]he medical evidence also does not demonstrate any medically determinable impairment to account for her complaints of vertigo and dizziness." R. 19. At Step 3, the ALJ concluded that Ina's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments. *See* R. 19–20. Specifically, the ALJ concluded that Ina's migraines did not medically equal the criteria of Listing 11.02, which covers non-convulsive epilepsy, "the most closely applicable listing section." R. 20. Before Step 4, the ALJ concluded that Ina had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §404.1567(b), except that she "could never climb ladders, ropes, or scaffolds, could occasionally climb ramps and stairs, and could occasionally balance, stoop, kneel, crouch, and crawl. She needed to avoid hazards of unprotected heights and moving dangerous machinery." R. 20. At Step 4, the ALJ concluded that Ina could perform her

"past relevant work as an accounting clerk, retail cashier, administrative clerk, actor, and membership solicitor," and that this work "did not require performance of work-related activities precluded by [Ina's] residual functional capacity." R. 23. Based on these findings, the ALJ concluded that Ina was not disabled under the Social Security Act during the relevant period. The ALJ thus did not address Step 5.

## DISCUSSION

### I. Standard of Review

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "'means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C. § 405(g).

### II. The ALJ's Step 3 Analysis

Ina raises two challenges to the ALJ's decision. First, she contends that the ALJ erred in not considering or ordering an expert medical opinion when evaluating Ina's RFC. *See* Dkt. 11 at

3

6–8. Second, she argues that the ALJ erred in concluding at Step 3 that Ina's migraines did not medically equal Listing 11.02 (non-convulsive epilepsy). *See* Dkt. 11 at 8–10. As discussed below, because the ALJ's Step 3 analysis alone warrants remand, the Court will not address, and thus makes no ruling about, Ina's argument as to the ALJ's RFC determination.

At Step 3, an ALJ considers whether a claimant meets or equals an impairment found in one of the Listings. *Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). The Listings contain impairments that are "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Id.* (citing 20 C.F.R. § 404.1525(a)). An individual who satisfies the criteria of a Listing is presumed to be disabled. *Id.*

Ina challenges the ALJ's conclusion at Step 3 that her migraines did not medically equal the criteria of Listing 11.02, which covers non-convulsive epilepsy. *See* Dkt. 11 at 8–10. "If [an] impairment[ ] does not meet the criteria of a listing, it can medically equal the criteria of a listing." 20 C.F.R. § 404.1525(c)(5). There is no Listing for migraines, so the Commissioner routinely analyzes whether headache disorders are medically equivalent to Listing 11.02. *See Jozefyk v. Saul*, No. 19-cv-01606, 2020 WL 5876063, at *3 (E.D. Wis. Oct. 2, 2020). The ALJ's reasoning on this point states:

> The claimant had migraines during the period at issue, but her condition did not medically equal section 11.02, non-convulsive epilepsy, the most closely applicable listing section (See, for example, 2F/7, normal neurological examination; normal physical functioning, normal attention, and concentration). The file supported doing such things as driving, as well as being a census taker (involved both walking and driving, job ended when the assigned census area was finished), election worker, and dog walker during the period at issue (5D; 8D; 10D; 7F/14, 17; Hearing testimony).

R. 20. Ina argues that "[n]one of that speaks to the requirements of the listing," which are "headaches occurring 'at least once a week for at least three consecutive months' despite adherence to treatment." Dkt. 11 at 9 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02(B)).

4

The Court agrees with the Plaintiff that the ALJ's medical-equivalence analysis was insufficient in this case and therefore warrants remand. Social Security Ruling (SSR) 19-4p governs how Social Security adjudicators should evaluate whether a headache disorder meets Listing 11.02. *See* SSR 19-4P, 2019 WL 4169635 (S.S.A. Aug. 26, 2019). It states in relevant part:

> Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI [medically determinable impairment] of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing.
>
> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. ***To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider***: A detailed description from an AMS [acceptable medical source[2]] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).
>
> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. ***To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in***: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

SSR 19-4p, 2019 WL 4169635, at *7 (emphasis added).

---

[2] An "acceptable medical source" generally refers to a licensed medical professional. *See* 20 C.F.R. §404.1502(a). The evidence required under Listing 11.02 includes "at least one detailed description of your seizures from someone, preferably a medical professional, who has observed at least one of your typical seizures." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.00(H)(2).

The ALJ's analysis speaks to none of the required considerations—not even to state that evidence is insufficient or lacking from the record. In fact, the ALJ's opinion does not acknowledge SSR 19-4p at all. *See Michelle L. M. v. Kijakazi*, No. 22-cv-00151, 2023 WL 3835583, at *6 (S.D. Ind. June 6, 2023) (remanding to the Social Security Administration because "the ALJ's listing analysis is barebones, at best," including because "he never indicated that he considered SSR 19-4p" in evaluating the claimant's migraines). The ALJ acknowledged that Ina "had migraines during the period at issue," but beyond that, simply said that Ina's "condition did not medically equal section 11.02," and that she drove and worked as a census taker, election worker, and dog walker. R. 20.

The Commissioner argues that the ALJ's mention of Ina's work history is consistent with SSR 19-4p, which permits an adjudicator to consider a migraine's "interference with activity during the day," if any. SSR 19-4p, 2019 WL 4169635, at *7; *see* Dkt. 18 at 7. But even if mentioning Ina's work history is consistent with one part of the SSR, the ALJ's analysis is insufficient for the Court to understand the ALJ's thought process and provide meaningful appellate review in the full context of the SSR and the other considerations it requires. *See Jennifer C. v. King*, No. 23-cv-50347, 2025 WL 296053, at *4 (N.D. Ill. Jan. 24, 2025) (remanding where "the ALJ did not specifically analyze the frequency and severity of Plaintiff's migraines to sufficiently support the RFC determination and a finding of no equivalence," and recognizing that "[i]t is difficult to undergo a meaningful review of the ALJ's decision if she provides no insight into her analysis").

The Court also considered the ALJ's RFC determination, since an RFC "discussion may doubly explain how the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing." *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020); *see also Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) ("[N]othing in *Chenery* prohibits a reviewing court from

6

reviewing an ALJ's step-three determination in light of elaboration and analysis appearing elsewhere in the decision."). But that discussion still does not adequately explain *why* the ALJ concluded that Ina's migraines were not medically equal to the criteria of Listing 11.02. In the RFC analysis, the ALJ acknowledged the following: in December 2020, Ina told her primary care physician, Peggy Wang, M.D., "she had migraines once or twice a week, as well as migraines before/around menses," R. 21; in January 2021, Ina told Dr. Wang that "the medication did not work," R. 21; in May 2021, Ina "complained of continued migraines, one to three times a week, to Dr. Wang," R. 21; in June 2021, Ina saw a neurologist, Anibal Lugo, M.D., where "[s]he asserted headaches three days a week, and said headaches did respond to Rizatriptan, which she took as needed, as well as Ibuprofen, as needed," R. 21; in July 2021, Ina "told Dr. Wang she saw the neurologist, and had received Nurtec samples, which kind of worked," R. 21; in August 2021, Ina told Dr. Lugo that "Nurtec was not helping," so Dr. Lugo placed her on Topomax and ordered a brain MRI, "which was normal," R. 21; in November 2021, Ina reported to Dr. Lugo that she had "a notable improvement with Topomax," R. 21; by January 2022, Ina was walking dogs for work, R. 21; and at a May 2022 gynecological visit (the last physician visit during the relevant period), Ina noted "she was taking medication for headaches, but aside from a yes mark on headaches noted in the chart, this was not addressed," R. 21. Although this discussion traces the course of Ina's treatment, the ALJ gave no indication that or how she considered all of the things required by SSR 19-4p, including whether the evidence Ina submitted did or did not meet the requirements of SSR 19-4p. *See* R. 20–23; SSR 19-4p, 2019 WL 4169635, at *7; *Jennifer C.*, 2025 WL 296053, at *3 ("The decision as a whole must demonstrate that the ALJ considered the relevant evidence of record and provide a rationale sufficient for this Court to determine the basis for the ALJ's finding on equivalence."). Thus, the ALJ's RFC analysis does not sufficiently buttress the insufficiency of

7

her Step 3 analysis. *See Kimberly K. v. Kijakazi*, No. 21-cv-02904, 2022 WL 11634615, at *4 (S.D. Ind. Oct. 20, 2022) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) ("The ALJ's explanation at Step Three does not disclose why the ALJ felt that the evidence did not equal paragraph B of Listing 11.02. The ALJ must provide an 'accurate and logical bridge from the evidence to [her] conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review.'").

The Commissioner's remaining arguments are not persuasive. First, the Commissioner argues that the ALJ's error is harmless because "the medical record simply lacked the evidence that a consultative examiner or medical expert would have required to conclude that the severity of plaintiff's headaches equaled in severity the criteria of Listing 11.02." Dkt. 18 at 6. Perhaps. But the ALJ did not say that, and the Commissioner's argument invites the Court to evaluate the medical evidence itself, which it is not permitted to do upon review. *See Warnell*, 97 F.4th at 1052–53 (explaining that the reviewing Court "will not reweigh the evidence[ or] resolve debatable evidentiary conflicts") (quotation marks omitted); *Kimberly K.*, 2022 WL 11634615, at *4 (rejecting the Commissioner's argument that "the descriptions of Plaintiff's headache events are insufficient to equal the listing" under the *Chenery* doctrine because the ALJ did not offer that rationale); *Melissa G. v. Saul*, No. 18-cv-50218, 2019 WL 4392995, at *10 (N.D. Ill. Sept. 13, 2019) (explaining that the court is "ill-prepared to make medical equivalency determinations between reportedly severe migraines and dyscognitive seizures, as such determinations are more appropriately reserved for medical experts").

Second, the Commissioner cites to another Social Security Ruling—SSR 17-2p, 2017 WL 3928306 (S.S.A. Mar. 27, 2017)—to argue that the ALJ's "statement that the individual's

8

impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." Dkt. 18 at 7–8. That SSR says:

> If an adjudicator at the hearings or AC [Appeals Council] level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding.

SSR 17-2p, 2017 WL 3928306, at *4. But as the Commissioner correctly acknowledges, SSR 17-2p also says that "[a]n adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." *Id.* In other words, SSR 17-2p recognizes what the case law already makes clear: that a reviewing court may evaluate the sufficiency of a no-equivalency determination by also considering the ALJ's analysis in a later section (including, for example, the RFC analysis). *See Jeske*, 955 F.3d at 590; *Jennifer C.*, 2025 WL 296053, at *3 ("[A]lthough the Commissioner is correct that 'a rote statement that equivalence is not met is all that is required' of the ALJ at step 3, the ALJ's step 3 determination still needs to be supported by substantial evidence. The decision as a whole must demonstrate that the ALJ considered the relevant evidence of record and provide a rationale sufficient for this Court to determine the basis for the ALJ's finding on equivalence.") (internal citation omitted). But as discussed above, the ALJ's RFC analysis does not save her Step 3 analysis.

To be clear, in concluding that this issue requires remand, the Court makes no determination as to whether Ina's migraines medically equal Listing 11.02, nor whether the medical evidence in the record is or is not sufficient to show that her migraines medically equal Listing 11.02's requirements. The Court holds only that the ALJ failed to sufficiently articulate and explain her

9

listing conclusion, and that this requires remand. In light of the Court's decision to remand on that issue, the Court need not address Ina's remaining argument. The Administration should not, however, construe the Court's silence as an indication that the ALJ's initial adjudication was appropriate or not with respect to that issue.

## CONCLUSION

Plaintiff's Motion to Reverse or Remand the Decision of Social Security (Dkt. 10) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 17) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

SO ORDERED.

DATED: August 28, 2025

HON. BETH W. JANTZ
U.S. Magistrate Judge